FREDERICK W. HERBERT, Appellant, v. WOOD, DOLSON COMPANY, INC., Respondent.

(Supreme Court, Appellate Term, First Department, November Term — Filed December, 1920.)

**Master and servant — the justification of a servant's discharge for a single act of intoxication is a question for a jury — trial.**

Whether a single instance of intoxication of an employee, during business hours, in celebration of the successful outcome of a business deal in behalf of his employer, justifies his discharge, is a question for a jury, and the dismissal upon the merits of the complaint in an action for wrongful discharge, on the ground that the discharge was justified as matter of law, is error for which judgment entered on such ruling will be reversed and a new trial ordered.

Bijur, J., dissents.

APPEAL by plaintiff from a judgment of the City Court of the city of New York, dismissing the complaint upon the merits at the close of the case, after trial by the court without a jury.

Jonas B. Weil (Albert M. Lee, of counsel), for appellant.

Thomas F. Kane, for respondent.

MULLAN, J.   The action is by an employee against employer, for damages for wrongful discharge, and the defense is that the discharge was justified. When both sides had rested, the court dismissed the complaint upon the merits, holding that the discharge was justified as matter of law; and the error assigned by the plaintiff is that the question whether the discharge was justified was properly one of fact and so should have been given to the jury.

Appellate Term, First Department, December, 1920.    [Vol. 113.

The defendant conducts a general real estate business in the borough of Manhattan, city of New York. On October 6, 1919, the plaintiff entered its employ under a contract containing the familiar provision requiring him to give his entire time and energy to the work of his employment. His. duties, as he stated them, were " to get as many contracts in the real estate field as I could, for sale or rent, apartments and houses . and office buildings, whatever was in their line." On December 5, 1919, at about four o'clock in the afternoon, he came to the defendant's office in a state of intoxication. There is a decided difference between his story of his condition and that told by defendant's witnesses, all of whom were in its employ. But the dissimilarity is more one of detail than of degree. Admittedly, he was in no condition to perform any service requiring a clear head. Undeniably, too, his presence in the office in that condition was very properly a matter for objection, and his continuance there may conceivably have worked some harm to the business interests of the defendant. He was not boisterous or offensive, and he caused no disturbance. He was, however, at least to some extent, incoherent. His " eyes burned." A " dizziness " had " come over " him. He felt " weak in the knees." It cannot be doubted that the defendant's officer, in sending the plaintiff home, did the natural and proper thing in the circumstancès. The plaintiff had driven to the office in his own car. The defendant's chauffeur, at the direction of defendant's officer, drove plaintiff to a garage nearby where plaintiff was in the habit of storing his car. An hour or so thereafter plaintiff felt sufficiently well and clear-headed to drive to his home at East Rockaway.

The plaintiff testified that his intoxication was caused by three drinks which he had taken in the late

afternoon with two men whom he had interested in some real estate renting transaction. The drinking was, apparently, in celebration of the successful outcome of the negotiations. Very little point seems to have been made at the trial, and as little is made here, as to the drinking being excusable by reason of the business plaintiff had in hand. I think the subject of the nature of the occasion might have been gone into more thoroughly.

A day or two after the occurrence narrated, the defendant discharged the plaintiff because of it; and the sole question presented here is, whether the single instance of intoxication referred to was sufficient ground for the discharge as matter of law. I am of the opinion that it was not, and that the question was one of fact and should have been submitted to the jury.

In *Huntington* v. *Claffin,* 38 N. Y. 182, the plaintiff, a store employee, was " frequently intoxicated in the store," and this was held to be ground for his discharge as matter of law.

In *Atkinson* v. *Heine,* 134 App. Div. 406, where the plaintiff, a traveling salesman, " had been on a rather severe spree," and shortly thereafter " entered on a prolonged spree, utterly neglecting his business," it was held that it was error for the trial court to refuse to charge that the salesman's " prolonged incapacity arising from intoxication justified a discharge."

In *Mowbray* v. *Gould,* 83 App. Div. 255, another case that was sent to the jury, the frequency of the intoxication of the plaintiff (a valet) was stressed by the court.

In *Clouston & Co.* v. *Corry,* (1906) App. Cas. 122, Lord James of Hereford said, for the House of Lords: " There is no fixed rule of law defining the degree of misconduct which shall justify dismissal. * * * Certainly when the alleged misconduct consists of

43

drunkenness there must be considerable difficulty in determining the extent or conditions of intoxication which will establish a justification for dismissal. The intoxication may be habitual and gross, and directly interfere with the business of the employer or with the ability of the servant to render due service. But it may be an isolated act committed under circumstances of festivity and in no way connected with or affecting the employer's business. In such a case the question whether the misconduct proved establishes the right to dismiss the servant must depend upon facts — and is a question of fact.''

Wood (Mast. & Serv. § 110) says: '' The question of the rightfulness of the discharge must in each case depend upon the nature of the services, the terms of his (the servant's) engagement, and the particular circumstances of the case. * * * The question * * * does not depend so much upon the moral turpitude, wilfulness or habitual character of the act, as upon its effect upon the master's business, or its inconsistency with the nature of the engagement, and in all cases it is a question of fact for the jury to say whether the particular misconduct in a particular case is sufficient.''

The respondent contends that a single instance of intoxication is always enough of itself, as matter of law, to justify discharge, and relies largely on a dictum in *Bass Furnace Co.* v. *Glasscock,* 83 Ala. 452, where it was said: '' There may be circumstances, however, under which a single act of drunkenness would warrant a servant's discharge; as, for example, in the case of a minister of the gospel, where the act might bring personal reproach, and tends to degrade the moral standard of religion; or of a family physician, where it might result in negligence; or malpractice in pharmacy or surgery.'' In the exceptional

cases referred to, or in the case of any service which from its very nature seems positively to require constant sobriety, I suppose it cannot well be doubted that a single instance of drunkenness would warrant discharge; as in the case of a locomotive engineer, or the agent of a temperance society or anti-saloon league. In the Alabama case cited and quoted from the court laid it down as the *general* rule that the employee must " abstain from *habitual* drunkenness, or repeated acts of intoxication."

However much a single instance of insobriety is to be deplored, courts are unwarranted in attempting to create and enforce a higher standard than that set by the average of mankind in the community. The day may come when intoxication will be such a cause for disgrace that an instance of it will suffice to justify a master in discharging a servant because of it, as matter of law, regardless of the nature of the service or of the effect of the insobriety upon the master's business. I am quite clear, however, that that day is not yet here, and that it would be hardly short of absurd to say that, as to a real estate agent, in 1920, in the city of New York, such a question as we have here can be taken from a jury upon the ground — and it can be only upon that ground — that no reasonable and conscientious man in a jury box could possibly cast his vote for a verdict that the discharge was not justified.

I advise that the case be sent down for a new trial upon which the question shall be left to the jury.

Judgment reversed and new trial ordered, with costs to appellant to abide the event.

BIJUR, J. (dissenting). I dissent. I think that a single act of voluntary positive drunkenness on the part of a servant, during business hours, unexcused and apparently inexcusable, warrants his discharge by

the master as matter of law. No serious attempt is made by plaintiff to explain the occurrence and the good faith of the employer is not challenged even indirectly. I do not understand it to be claimed in this case that the plaintiff's conduct directly interfered with the defendant's business because it is not testified that any customer of the defendant observed plaintiff's condition. The act was, however, as I view it, a substantial abandonment *pro tanto* of the master's service and warranted the master in withdrawing from the servant that confidence which lies at the root of the relation. It thus became as matter of law an adequate cause for discharge.

Judgment reversed, and new trial ordered, with costs to appellant to abide event.